IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06cr012-MEF |
| | ) | WO |
| TERRANCE CORNELIUS | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on defendant Terrance Cornelius' motion to suppress filed March 3, 2006 (Doc. #65). The court held a hearing on the motion on July 11, 2006. For the reasons discussed below, the motion is due to be denied.

**Facts**

1.  Alabama traffic stop[1]

On January 15, 2006, Alabama State Trooper Will Barnes stopped an 18-wheeler trailer truck on I-85 just outside of Montgomery, Alabama, for an improper lane change. Two of defendant Cornelius' co-defendants – Craig Canady and Troy Williams – were in the truck. After the stop, Canady, who was the driver of the truck, got out and walked with Trooper Barnes to his patrol car. As they walked, Barnes detected an odor coming from Canady that Barnes thought was burnt marijuana. After further conversation, Barnes became increasingly suspicious of criminal activity and asked Canady if he could search the truck and trailer. Canady consented to the search. Among other items, officers found

---

[1] The facts relating to this traffic stop are only briefly summarized here, as defendant Cornelius does not have standing to challenge this stop or the consent search of the trailer. See *infra*.

approximately 700 pounds of marijuana in 10 U-Haul packing boxes in the trailer of the truck. Canady and Williams were arrested.

Subsequently, DEA task force agent Joe Herman interviewed both Canady and Williams after they were advised of their rights. They made statements and agreed to cooperate in a controlled delivery of the marijuana to its destination in the Atlanta, Georgia area.

2.      Georgia traffic stop

Agent Herman contacted DEA special agent John Rapp in Atlanta and asked him to facilitate the controlled delivery. Herman and Rapp decided to set up the delivery over the telephone. Thereafter, Canady and his Jonesboro contact, known only by the name of "Longley" to Canady, made arrangements for the delivery of the marijuana through approximately seven consensually monitored and recorded telephone calls.

From Canady, Agent Herman obtained a physical description of the individual to whom the marijuana was to be delivered. Herman also secured directions to the apartment complex in Jonesboro, Georgia (near Atlanta) on Tara Boulevard where Longley was staying when these directions were conveyed by Longley to Canady during one of the monitored telephone calls. In addition, Herman learned that Canady had rented a maroon Marquis or Taurus or Sable car for use by Longley in the drug transactions. Herman transmitted this information to Rapp in Georgia.

Special agent Rapp and other law enforcement agents traveled to the apartment complex identified by Canady on Tara Boulevard, located a maroon Taurus there, and set up

surveillance. Canady placed a monitored phone call to Longley and, shortly after the call, a person fitting the description of Longley came out of an apartment with another individual, withdrew a black duffel bag from the maroon car, and returned to the apartment. In order to draw Longley out of the apartment complex, Canady then placed another monitored call indicating that his truck had mechanical problems. Canady and Longley agreed to meet at the Tropicana truck stop or restaurant. Within minutes of that call, agents saw two males, one of whom matched the description provided by Canady,[2] get into the Taurus and leave the apartment complex.

The agents executed a traffic stop. The driver of the Taurus was identified as Demetrius Hawkins, and the passenger was identified as Terrance Cornelius. Both Hawkins and Cornelius were advised of their rights and provided statements admitting their involvement in the drug conspiracy to law enforcement.

### Discussion

1.   Alabama traffic stop

The government contends that defendant Cornelius does not have standing to challenge the Alabama traffic stop and the search of the truck. The court agrees.[3]

---

[2] The complaint in this case indicated that the two males entering the rental car "matched the description of 'FNU LNU' and 'Longley LNU.'" However, at the suppression hearing, Herman testified that he did not think that Canady ever gave a description of Hawkins.

[3] Although the United States labels this inquiry as a question of standing, "the Supreme Court recently reminded us that the question '"is more properly placed within the purview of substantive Fourth Amendment law than within that of standing."'" United States v. Chaves, 169 F.3d 687, 690 (11th Cir. 1999) (citing Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 472, 142 L.Ed.2d 372 (1998)).

Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978); see also Crosby v. Paulk, 187 F.3d 1339, 1346 n. 10 (11th Cir. 1999); Lenz v. Winburn, 51 F.3d 1540, 1549 (11th Cir. 1995). "Thus, in a variety of circumstances, courts have held that a person does not have a reasonable expectation of privacy in another's belongings." Id. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas, 439 U.S. at 134; see also United States v. Chaves, 169 F.3d 687, 690 (11th Cir.1999). "And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment ... it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." Rakas, 439 U.S. at 134 (citation omitted).

Defendant Cornelius was not a driver or passenger in the truck and trailer that were stopped by Trooper Barnes in Alabama. Nor did Cornelius have any ownership or other possessory interest in the vehicle. In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. United States v. Chaves, 169 F.3d 687, 690 (11th Cir. 1999). In this case, defendant Cornelius has failed to meet his burden to prove that he had a legitimate expectation of privacy in the tractor trailer that was stopped in Alabama.

2. Georgia traffic stop

To the extent that defendant challenges the search of the maroon Taurus stopped by

4

agents in Georgia, a similar analysis applies. Canady rented this vehicle and Hawkins was the driver. Cornelius was merely a passenger. "A passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents, regardless of whether the driver owns or rents it." United States v. Leal, 2003 WL 21665126, *6 (M.D.Fla. 2003)(citing United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir.1998)).

In this case, defendant has made no showing that he had a legitimate expectation of privacy in the Taurus. He does not assert a property or a possessory interest in the automobile. His presence in the vehicle alone is not sufficient to establish standing to challenge the propriety of the search. Leal, 2003 WL 21665126 at *6; see also United States v. Chanthasouxat, 342 F.3d 1271, 1273 n. 1 (11th Cir. 2003) (Defendant had no expectation of privacy in the van in which he was a passenger.). Thus, defendant Cornelius has failed to prove that any search of the Taurus implicated his Fourth Amendment rights, and he may not contest a search of that vehicle.

However, to the extent that defendant alleges that the Georgia traffic stop and his subsequent detention were unlawful, he does have standing. A passenger in a vehicle generally has standing to challenge the legality of the initial stop and detention. Leal, 2003 WL 21665126 at *7 (citing United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir.2001); see also United States v. Green, 275 F.3d 694, 698-99 (8th Cir. 2002); United States v. Woodrum, 202 F.3d 1, 5-6 (1st Cir.2000); United States v. Roberson, 6 F.3d 1088, 1091 (5th Cir.1993); United States v. Lawson, 782 F.Supp. 1546, 1547-48 (S.D.Fla.1992)). "'Whereas the search of an automobile does not implicate a passenger's fourth amendment rights, a stop

5

results in the seizure of the passenger and driver alike. Thus, a passenger of a stopped automobile does have standing to challenge the seizure as unconstitutional.'" Leal, 2003 WL 21665126 at *7 (citing Roberson, 6 F.3d at 1091 (footnote omitted)); see also U.S. v. Moore, 2006 WL 1232811, *1 (M.D.Fla. 2006) (collecting cases). Accordingly, the court will address the legality of the Georgia traffic stop and defendant's subsequent arrest.

The legality of a traffic stop is analyzed under Terry v. Ohio, 392 U.S. 1 (1968). Pursuant to Terry, "[l]aw enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity." United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing Terry v. Ohio, 392 U.S. 1 (1968)). "The Terry rationale allows police to stop a moving car based on a reasonable suspicion that its occupants are violating the law." Diaz-Lizaraza, 981 F.2d at 1220. "The reasonable suspicion required for a Terry stop is more than a hunch, at least 'some minimal level of objective justification,' taken from the totality of the circumstances." Id. at 1220-21 (citation omitted).

In this case, agents had a level of objective justification for stopping the maroon Taurus that was far from minimal. Canady, the informant, was a reasonably reliable source of information concerning the drug conspiracy. He was not an anonymous tipster, but a co-defendant who participated in the alleged conspiracy, made a statement incriminating himself in that conspiracy, and agreed to cooperate. See Craig v. Singletary, 127 F.3d 1030, 1045 (11th Cir. 1997) (Statements by co-defendant who has incriminated himself are "reasonably

6

trustworthy information."). Law enforcement agents followed up on Canady's offer to cooperate by immediately employing him to set up approximately seven consensually monitored and recorded telephone calls to make further arrangements for delivery of the marijuana. They obtained a physical description of the individual to whom the marijuana was to be delivered, specific directions to the apartment complex in which the expected recipient of the marijuana was staying, and a description of the maroon Marquis or Taurus or Sable car to be used in the transaction. Agents subsequently found a maroon Taurus at the Tara Boulevard apartment complex, just as Canady described.

     A person fitting the description provided by Canady came out of an apartment and took something out of the Taurus after Canady placed a call to his contact. Thereafter, within minutes of a second monitored call in which Canady and his contact agreed to meet at the Tropicana truck stop or restaurant, two males, one of whom matched the description provided by Canady, got into the Taurus and left the apartment complex. Thus, in this case, detailed, specific information provided by an informant, which was corroborated by additional police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop of the Taurus.

     Cornelius' arrest after the traffic stop was also lawful. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."

Id. The probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act. Maryland v. Pringle, 540 U.S. 366, 370 (2003). The substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and the belief of guilt must be particularized with respect to the person to be searched or seized. Id.

In this case, Herman testified that when the observations that were made by the Georgia agents coincided with the information provided by Canady and the directions given by "Longley" to Canady, the agents drew the conclusion that Longley was, in fact, defendant Cornelius, a passenger in the Taurus. This conclusion was a reasonable one based on the facts known by the arresting officers, as described above, and the officers' belief of guilt was sufficiently particularized with respect to Cornelius. Accordingly, because "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," and probable cause must be judged "with a common sense view to the realities of normal life," the court readily concludes that the Georgia agents had probable cause to arrest the defendant. Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997).

## Conclusion

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant Terrance Cornelius' motion to suppress (Doc. #65) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said

Recommendation on or before close of business August 24, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 11th day of August, 2006.

/s/ Susan Russ Walker  
SUSAN RUSS WALKER  
UNITED STATES MAGISTRATE JUDGE